## MATTHIAS HOLLACHER, APPELLANT, *v.* JAMES O'BRIEN, SHERIFF, ETC., RESPONDENT.

2 *R. S. (Edm. ed.)*, 141, § 5 — *retaining possession of chattels by vendor — fraudulent intent a question for the jury.*

The presumption of a fraudulent intent created by the statute (2 R. S. [Edm. ed.], 141, § 5), from the fact that there is no change in the possession of goods sold or mortgaged, may be removed by the party claiming under the sale or mortgage proving that the transaction was in good faith, and without any intention to defraud purchasers or creditors; and the question of intent arising in the case is one of fact for the jury to try.

Where the evidence is insufficient to rebut the statutory presumption of fraud, and the jurors appear to have been too indulgent in their consideration of the transactions of fraudulent debtors, justice can be obtained by setting aside the verdict.

APPEAL from a judgment in favor of the defendant, entered on a verdict directed by the court.

*John S. Berry*, for the appellant.

*A. J. Vanderpoel*, for the respondent.

DANIELS, J. :

The object of this action was the recovery of the possession of personal property, for which the plaintiff received a bill of sale from his brother, Michael Hollacher, on the 21st of April, 1869. The property constituted the stock of a show case business, and when the bill of sale was made, the evidence tended to show the vendor to be heavily involved with debts, and at that time to have suits pending against him.

The consideration stated for the sale was the sum of $3,000, which the evidence tended to show was paid by applying $2,800 on a precedent debt owing from the vendor to the vendee, and the payment of $200 in money. The counsel in attendance on the consummation of the sale, stated that the plaintiff directed Andrew Hollacher, a son of the vendor, to go on and conduct the business for the purchaser. But if this direction was given, it was not continued or followed; for the plaintiff testified that he gave his brother, the vendor, the privilege of doing the business for him; and it further appeared from the evidence of this witness, that it was carried on in that manner from the time of the delivery of the bill of sale to the time when the property was taken by the defendant. He took it in May, 1869, under executions issued upon judgments recovered after the delivery of the bill of sale, upon debts created before that time, and owing by the vendor. At the close of the evidence the court directed a verdict in favor of the defendant, to which the plaintiff's counsel excepted.

This direction appears, from the remarks of the learned judge presiding at the trial, to have been given because there had been no actual change in the possession of the property sold. And as to the fact, he was entirely right in that respect; for although there was evidence of a formal possession having been taken by the plaintiff at the time of the execution of the bill of sale, it at once passed back to the vendor by the act and authority of the vendee.

The statute requires more than a mere formal act of possession by the purchaser, in order to avoid the presumption that the sale was a fraudulent one. Its language is, that the sale shall " be followed by an actual and continued change of possession of the things sold," in order to remove the presumption of fraud otherwise arising out of the transaction. (2 R. S. [Edm. ed.], 141, § 5.)

These terms are very plain, and they can only be complied with by the purchaser's, himself, taking and continuing in the possession of the property, or having it held for him by some other person than the seller. If that is not done, and the seller of the property is allowed to remain in the possession of it, as he was in this instance, then the statutory provision applies, that the sale is to be presumed to be fraudulent and void, in favor of the creditors of the person making it and subsequent purchasers in good faith. But this presumption is not so far controlling as to prevent the purchaser from avoiding it by any proper evidence which can reasonably be attended with that result. Accordingly, the statute has provided that the continued possession of the person making the sale shall only be conclusive evidence that it was fraudulent, when it is not shown to have been made in good faith, and without any intent to defraud creditors or purchasers. To overcome this presumption of the statute, evidence was given tending to show an actual consideration for the sale, occasional attention to the business by the vendee, and the receipt of small sums of money by him from its transactions. The evidence on these subjects was not of a very satisfactory character. It left grave doubts as to whether any real debt existed in favor of the vendee against the vendor, and whether he did any thing more than to present himself at the place where the business was carried on, for the purpose of contributing the merely colorable conclusion that he, and not his brother, was its proprietor, when, in truth, the fact was probably otherwise. But the force and effect of the evidence was for the jury, and not for the court. If they had voluntarily returned the verdict they were directed to give, it would be entirely satisfactory. But it was their province to consider the evidence without being controlled in their action, as they were, by the court.

It was said, in one of the prevailing opinions delivered in the Court of Errors, in *Hanford* v. *Artcher* (4 Hill, 271): " To rebut this presumption [arising out of the possession of the vendor of personal property], the statute imposes upon the party claiming under the sale * * * the burden of proving not only that it was in good faith, but that it was without any such intent to defraud creditors. Proof of a valuable consideration or an honest debt is essential to show good faith ; and if there be no such proof,

I take it that the requirement of the statute in this respect is not complied with, and that the court may order a nonsuit, or, if a verdict be found, set it aside." "Such proof of consideration, too, must go beyond a mere paper acknowledgment of it that might be binding between the parties." "But over and above evidence of consideration, or an honest debt, to show good faith, the statute seems to contemplate something further: that is, proof of circumstances showing absence of intent to defraud creditors — such circumstances as would show that the transaction was in the ordinary way of fair dealing, and with reasonable publicity under the circumstances * * * or such other relevant circumstances as the case may reasonably admit of, to satisfy the jury that the transaction was without any intent to defraud creditors." (Id., 295, 296.) And it was held in the other opinion, which also seems to have been adopted by the court, that the evidence which will be sufficient to prove good faith, and the absence of an intent to defraud, must necessarily vary in each individual case. "The statute therefore has left this, like every other fact or question of intent, to be determined by the jury, under the direction of the court, from the legal, competent and relevant testimony presented to them according to the ordinary and established rules of evidence. To this end it has made such fraudulent intent a question of fact and not of law." (Id., 302.) And to the same effect was the opinion delivered by JEWETT, J., and adopted by the court, in *Thompson* v. *Blanchard* (4 Comst., 303). He held that the presumption of a fraudulent intent could be removed by the party claiming under the sale, "proving that the transaction was in good faith, and without any intention to defraud purchasers or creditors; and the question of intent arising in the case is one of fact for the jury to try." (Id., 306.)

A similar view was expressed of the law by BRONSON, J., in *Griswold* v. *Sheldon* (4 Comst., 581). He held that the Court of Errors had decided, "that although the property was left in the possession of the debtor, yet if the vendee or mortgagee gave evidence tending to repel the legal presumption of fraud, the question of fraudulent intent was one of fact, which must be left to the jury." (Id., 591.) In another opinion, delivered by MULLETT, J., it was also held that, "if there is any material evidence in the case

tending to show that the mortgage was made in good faith, and without any intention to defraud creditors, that raises a question of fact which it is the duty of the court to submit to the jury." (Id., 598.) These authorities, as well as the explicit phraseology of the statute, leave no room for doubt as to the impropriety of the direction given by the court in this case. The question of fraudulent intent should have been submitted to the jury. And that can ordinarily be done with entire safety to the rights of creditors and purchasers in good faith. Where the evidence does not satisfactorily show the transaction to be fair and honest, and founded on a valuable consideration, jurors may have been too indulgent to fraudulent debtors, but when that appears to be the case, justice can always in the end be attained by setting aside the verdict. It cannot justify the refusal to submit for their consideration the questions which the language, as well as the theory of the statute, requires that they shall decide.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and DONOHUE, J., concurred.

Ordered accordingly.